**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**WESTERN DIVISION**

| | |
|---|---|
| JODI L, ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | No. 17 C 50235 |
| v. ) | |
| ) | Magistrate Judge |
| NANCY A. BERRYHILL, Acting ) | Iain D. Johnston |
| Commissioner of Social Security, ) | |
| ) | |
| *Defendant*. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Jodi L. ("Plaintiff") claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's memorandum, which this Court will construe as a motion for summary judgment (Dkt. 13) is **denied** and the Commissioner's memorandum, which this Court will also construe as a cross-motion for summary judgment (Dkt. 18) is **granted**.

**I. BACKGROUND**

**A. Procedural History**

Plaintiff filed her applications on November 27, 2013, and December 4, 2013, alleging disability beginning on November 15, 2013[1], due to airway disease, shortness of breath, tracheotomy, difficulty speaking, mood swings, depression, fatigue, urinary incontinence, and MRSA. R. 247–58, 310. Plaintiff's applications were denied initially and on reconsideration. R.

---

[1] Plaintiff amended her onset date at the hearing. R. 289

72–73, 104–05. On April 1, 2016, Plaintiff, represented by an attorney, testified, via video, at a hearing before an Administrative Law Judge ("ALJ"). R. 10–44. The ALJ also heard testimony from Ashok Jilhewar, M.D., a medical expert ("ME") and Diamond Warren, a vocational expert ("VE"). *Id*.

Plaintiff was 38 years old at the time of the hearing. Plaintiff testified that she cannot work because of a combination of recurring infections and coughing fits that stem from her tracheostomy tube[2]. R. 23–24. According to Plaintiff, she has coughing fits that cause her to pass out. R. 19–21. In addition, she testified that the tracheostomy tube made her more prone to infections because she has to place her finger over the tube to speak. R. 20, 22. She also testified that she would require frequent breaks to clean her tracheostomy tube, which she claimed she cleaned ten times a day[3]. R. 24. She explained that she would clean it frequently because it was easier to breath and caused her to cough less. R. 25. Plaintiff noted it would take her ten to twelve minutes to clean the tube. R. 24.

The ME opined that Plaintiff did not meet or equal a listing. R. 21, 31–32. The ME testified that there was no "documentation for need for suctioning as frequently as mentioned" by Plaintiff. R. 32. He stated that she would need to clean her tracheostomy tube at two-hour intervals. R. 33. Ultimately, the ME limited Plaintiff to sedentary work with additional postural, communicative, and environmental limitations. R. 33–34.

---

[2] Plaintiff underwent a tracheotomy in 2011. R. 986. A tracheotomy is a surgical procedure in which "an incision is made in the front of the patient's neck and a breathing tube is inserted through a hole into the trachea." Available at https://www.health24.com/Medical/COPD/The-lungs/What-is-a-tracheotomy-20120721 (available at January 9, 2019). The breathing tube, known as a tracheostomy tube, consists of three parts. The first part is the outer cannula, which is a hollow piece of tubbing used to hold the tracheostomy open. The second part is the inner cannula, which fits inside the outer cannula and serves as a liner to prevent mucus build-up. The inner cannula can be removed for cleaning. The third part is the obturator, which is used to insert the outer cannula. *Available at* https://www.hopkinsmedicine.org/tracheostomy/about/types.html (last viewed January 9, 2019).

[3] In her functional report, Plaintiff reported "trach care" three to five times a day. R. 412.

The VE testified that a hypothetical individual with Plaintiff's background who was limited to sedentary work and could never climb ladders, ropes, or scaffolds, kneel or crawl, could do all other postural activities occasionally, was unable to communicate regularly on the phone, could never be in unprotected heights, and avoid concentrated exposure to hazards such as large machinery, pulmonary irritants, and extreme cold and humidity, could not perform Plaintiff's past work. R. 37. The VE testified that there were other jobs such a person could perform, including document preparer, address clerk, and circuit board assembler. R. 37–38. The ALJ included additional limitations, including limiting Plaintiff to frequent overhead bilateral reaching and simple/routine changes. R. 42. The VE testified that Plaintiff could still perform the aforementioned jobs. *Id*. With respect to breaks, the VE testified that in addition to the two fifteen-minute breaks and lunch break, Plaintiff could also have brief washroom breaks every hour. R. 39–41. The VE also noted that Plaintiff could not be off task more than fifteen percent and could not miss more than two days of work a month. R. 39, 41.

On August 2, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled. R. 129–41. On June 19, 2017, Plaintiff's request for review by the Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner. R. 1-3. This action followed.

**B. ALJ Decision**

On August 2, 2016, the ALJ issued an unfavorable decision. R. 129–41. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. R. 131. At step two, the ALJ found Plaintiff suffered from severe impairments of idiopathic subglottic stenosis, status post tracheostomy; obesity; chronic obstructive pulmonary disease ("COPD"); arthralgia of the lumbar spine; stress incontinence of

the bladder; GERD; and bipolar disorder. *Id*. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). R. 132.

Before step four, the ALJ found that she had the residual functional capacity ("RFC") to perform work at a sedentary exertional level, subject to some limitations.[4] R. 133–34. At step four, the ALJ concluded that Plaintiff was not capable of performing her past relevant work. R. 139. At step five, the ALJ found Plaintiff could perform other work, including document preparer, address clerk, and circuit board assembler. R. 140. Because of this determination, the ALJ found that Plaintiff was not legally disabled. R. 141.

## II. DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

---

[4] She can never climb ladders, ropes, or scaffolds, kneel or crawl. She can occasionally climb ramps, stairs, balance, stoop, and crouch. She is unbale to communicate on the telephone. She cannot work at unprotected heights, and must avoid concentrate exposure to work hazards, such as large moving machinery. She must avoid even moderate exposure to pulmonary irritants and must avid concentrated exposure to extreme cold or extreme humidity. She cannot perform more than twenty minutes of walking at a time. She is limited to simple, routine, and repetitive tasks. She can occasionally reach overhead bilaterally. She cannot speak unless one hand is on the tracheotomy tube. R. 133–34.

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build the logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19 (N.D. Ill. Oct. 29, 2014).

On appeal, Plaintiff raises several perfunctory arguments. Plaintiff argues, in part, that the ALJ erred in evaluating her testimony. She also takes issue with the ALJ's proffered RFC, claiming it is not supported by substantial evidence. For the reasons that follow, the Court disagrees.

Plaintiff argues first that the ALJ's analysis of her subjective complaints was flawed. An ALJ's credibility determination should be reversed only if it is patently wrong, "which means the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). Thus, the ALJ must "explain [his] decision in such a way that allows [a reviewing court] to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *Id*. (citing *McKinzey v. Astrue,* 641 F.3d 884, 890 (7th Cir.2011).

Plaintiff contends that the ALJ impermissibly discounted her testimony by speculating that her respiratory infections were caused by her work environment. *See White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("a decision based on speculation is not supported by

substantial evidence."); *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995) (noting that Plaintiff "is entitled to a decision based on the record rather than on a hunch.") Plaintiff's argument is meritless. Contrary to her argument, the ALJ in this case did not speculate. Rather, the ALJ relied on treatment records from the record to support his decision. R. 135–39. The ALJ noted that treatment records showed that Plaintiff's pneumonia and MRSA infections were linked to her work environment. *Id.* A review of the record supports the ALJ's reasoning. For example, doctors noted that her work at the nursing home put her at greater risk for MRSA and pneumonia. R. 588, 596. Notably, Plaintiff does not address this evidence. Instead, she claims that her respiratory infections were caused by her need to place her fingers over her tracheostomy tube to speak. R. 20, 22. In other words, Plaintiff argues that she was susceptible to infections, not because she worked in nursing homes, but because of bacteria and germs on her fingers. Plaintiff, however, does not cite to any relevant evidence[5] to support her argument. *See Hoy v. Astrue*, 390 F. App'x 587, 592 (7th Cir. 2010) (noting that the Court need not consider a plaintiff's speculative limitations.) Consequently, the Court finds that the ALJ's reasoning is supported by substantial evidence.

Next, Plaintiff argues that the ALJ erred in evaluating the number and length of bathroom breaks she required. The RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity

---

[5] Plaintiff cited to a treatment note from Seth Dailey, M.D., which she argued "shows that [the doctor's] main concern about infection was that [P]laintiff would get an infection by touching her trach[.]" A review of the record however, contradicts her argument. Plaintiff met with Dr. Dailey in response to her employer's fear that she could spread disease to clients. R. 639. The doctor agreed to write a letter to her employer, explaining that she does not have excessive secretions or any problem that would increase the risk of infecting others. *Id*. Thus, it is unclear how this evidence contradicts the ALJ's reasoning or imply that Plaintiff would get sick from touching her tracheostomy tube.

to do work-related physical and mental activities." *See* SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). It represents "the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004) ("The RFC is an assessment of what work-related activities the claimant can perform despite her limitations.") The ALJ has the final responsibility for determining the RFC and is not obligated to adopt any one doctor's opinion. *Retzloff v. Colvin*, 673 F. App'x 561, 568 (7th Cir. 2016). Nonetheless, when developing the RFC, the ALJ must explain how he reached his conclusions and must build an "accurate and logical bridge" from the evidence to his conclusions. *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011); *Young*, 362 F.3d at 1002.

In this case, the ALJ concluded that Plaintiff did not need additional breaks to clean her tracheostomy tube. In doing so, the ALJ relied on the testimony of the ME, who opined that there was no evidence that Plaintiff needed to clean her tracheostomy tube as frequently as she mentioned and that she could clean it every two hours. R. 137, 32–33. Plaintiff objects, claiming that the ME did not understand the tools or process involved. As with her first argument, Plaintiff again fails to cite to any relevant evidence[6] to support her argument. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); *see also Weaver v. Berryhill*, 2018 WL 3996853, at *3 (7th Cir. Aug. 20, 2018) (explaining that it is claimant's burden to provide evidence to support specific limitations affecting her ability to work.). Decidedly, no doctor recommended greater limitations than the ALJ and there is no error when there is no doctor's

---

6   Plaintiff cites to treatment notes, which were reviewed by the ME, that instruct her to place a cleaning solution on a drain sponge once to twice per day. She also cites to her functional report in which she noted she would need to change her tracheostomy ties. It is unclear how this evidence contradicted the ME's testimony.

opinion that indicates greater restrictions than those found by the ALJ. *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004). Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

Plaintiff also frivolously argues that the ALJ failed to reconcile whether taking ten to fifteen-minute breaks every two hours would be consistent with full time employment. But a review of the transcript confirms that there was no inconsistency to resolve. The VE testified that employers customarily allow two fifteen-minute rest periods plus lunch. R. 39. This is consistent with the ME's testimony that Plaintiff would need to clean her tracheostomy tube every two hours[7].

### III. CONCLUSION

In conclusion, Plaintiff has neither provided any evidence contrary to the ALJ's findings nor demonstrated any legal error in that regard. As such, the Court denies Plaintiff's motion for summary judgment, grants the government's motion for summary judgment, and affirms the ALJ's decision in its entirety.

Entered: January 29, 2019  By: _____
Iain D. Johnston
U.S. Magistrate Judge

---

[7] Plaintiff would work for two hours, then have a fifteen-minute break to clean her tracheostomy tube and return to work. Two hours later she would have the opportunity to clean her tracheostomy tube at lunch before returning to work. Then, two hours later she could again clean her tracheostomy tube, work for two hours, then go home.